**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FEDERAL TRADE COMMISSION,
            *Plaintiff-Appellee,*

v.

JOHN STEFANCHIK, individually and
as an officer and director of
Beringer Corporation; BERINGER
CORPORATION, a Washington
corporation doing business as
Stefanchik Organization,
            *Defendants-Appellants.*

No. 07-35359

D.C. No.
C-04-1852-RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted
January 22, 2009—Seattle, Washington

Filed March 13, 2009

Before: Thomas M. Reavley,* Senior Circuit Judge,
Richard C. Tallman and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Reavley

*The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

## COUNSEL

Deirdre Glynn Levin, Seattle, Washington, for defendant-appellant Beringer Corporation.

John Stefanchik, Pro se, Mercer Island, Washington, defendant-appellant.

Leslie Rice Melman, Washington, D.C., for plaintiff-appellee.

## OPINION

REAVLEY, Senior Circuit Judge:

We must decide in this case whether the district court correctly granted summary judgment to the Federal Trade Commission ("FTC") in this suit brought against John Stefanchik and Beringer Corporation under the Federal Trade Commission Act and the Telemarketing Sales Rule. The FTC alleged that the defendants made false and deceptive claims while marketing a program purporting to teach purchasers how to become wealthy by buying and selling privately held mortgages. Concluding that the defendants failed to meet the FTC's overwhelming evidence of deceptive claims with evidence to create a triable issue of fact, we AFFIRM the district court's judgment.

## I.

John Stefanchik is the author of a book entitled *Wealth Without Boundaries*. The purpose of the book, as well as related video and audio tapes, course materials, and workshops, was to present Stefanchik's method for making substantial amounts of money by working very few hours in one's spare time. Stefanchik's method called for a person to search local real estate records, locate holders of privately held mortgages, or "paper," and then either purchase the paper or broker deals with companies interested in purchasing the paper. Stefanchik touted his method in direct mail marketing materials as "[t]he easiest way to make $10,000+++ every 30 days . . . guaranteed."

In 2002 Stefanchik organized the Beringer Corporation as a Washington state corporation with himself as the president, director, and sole shareholder. Beringer in turn holds the copyrights to Stefanchik's book and other material that comprise the "Stefanchik Program." Stefanchik also entered into an oral agreement with Justin Ely of Atlas Marketing, Inc. for

Atlas to market the Stefanchik Program and handle customer service. According to Atlas' president, Scott Christensen, Atlas' sole business was to sell products and services for Stefanchik and Beringer under the name "The Stefanchik Organization." Atlas promoted the Stefanchik Program through direct mail, telemarketing, and a website, and it paid Stefanchik and Beringer a royalty of 15% to 22% of the sales.

Atlas used direct mail to generate interest in Stefanchik's book, which sold for a nominal amount. Many of the materials included Stefanchik's picture and signature and claimed that purchasers could easily make $10,000 or more per month by using his method. Those who purchased the book were then targeted for telemarketing calls and urged to purchase more services and instruction in the form of printed material, videos, seminars, and "coaching" services. The telemarketers assured potential purchasers that by using the Stefanchik method they could make $3,000 to $5,000 per deal by working only five to ten hours per week and that privately held mortgages were easily found. They also told purchasers that a personal coach would be available to answer questions and provide assistance. The cost to individual purchasers for the program ranged from $3,000 to over $8,000.

The FTC filed a complaint against Stefanchik and Beringer, as well as Atlas, Ely, Christensen, and another corporate entity controlled by Ely.[1] The FTC alleged that the defendants violated the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), by making false, misleading, and deceptive claims that consumers could quickly make large amounts of money in their spare time by purchasing the Stefanchik Program and that the coaches were experienced and readily available to assist them in the paper business. It also alleged that the defendants violated the Telemarketing Sales Rule

---

[1] All defendants except for Stefanchik and Beringer entered into a stipulated judgment and are not part of the present appeal.

("TSR"), 16 C.F.R. § 310.3(a)(2)(iii) and (a)(4), by making these misleading representations.

In support of a motion for summary judgment, the FTC introduced evidence tending to show that, contrary to Stefanchik's marketing claims, it was in fact very difficult for individuals to amass wealth using the Stefanchik method, and that the claims of making substantial amounts of money in one's spare time were deceptive and misleading. The FTC's evidence included declarations from individual consumers who purchased the program only to find that the method was extremely time consuming and yielded little, if any, profit. The FTC also introduced the following: survey results from a marketing expert showing that only a small percentage of customers were able to broker deals using Stefanchik's method; a declaration from a former Stefanchik coach who averred that few consumers made money using the program and that Stefanchik had been informed that the telemarketers were misleading consumers; and evidence from Beringer's company database that also showed a lack of results by consumers.

In opposing summary judgment, Stefanchik and Beringer challenged the FTC's method of compiling the survey data but did not offer any consumer declarations, contrary survey information, or other evidence showing that the followers of the Stefanchik method actually amassed substantial wealth as claimed in the marketing material. The district court concluded that the FTC's consumer declarations and survey, as well as the defendants' own advertising and marketing materials, were sufficient to show that the defendants made false and unsubstantiated earnings claims that led consumers to believe they could earn large amounts of money in the paper business with little or no effort. The court concluded that the coaching claims were also deceptive because the evidence showed that the coaches lacked basic knowledge of the real estate industry and were unable to help the consumers with questions. The court determined that Beringer and Stefanchik

were jointly and severally liable under the FTC Act and the TSR for misrepresentations in marketing the program. In addition to ordering injunctive relief, the court determined that the damages amounted to $17,775,369 and entered judgment for that amount.

## II.

Stefanchik and Beringer challenge the district court's grant of summary judgment on both liability and damages. Our standard of review is a familiar one. We review de novo the district court's grant of summary judgment. *McDonald v. Sun Oil Co.*[2] We view the evidence in a light most favorable to the non-moving party and decide whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law. *FTC v. Gill.*[3]

A party moving for summary judgment must initially identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett.*[4] "Once the moving party meets its initial burden, however, the burden shifts to the non-moving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *Horphag Research Ltd. v. Garcia.*[5]

### A.

[1] Section 5 of the FTC Act prohibits, *inter alia*, "unfair

---

[2]548 F.3d 774, 778 (9th Cir. 2008).

[3]265 F.3d 944, 954 (9th Cir. 2001).

[4]477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

[5]475 F.3d 1029, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted).

or deceptive acts or practices in or affecting commerce."[6] "An act or practice is deceptive if 'first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material.' "[7] Deception may be found based on the "net impression" created by a representation. *FTC v. Cyberspace.com LLC.*[8]

Stefanchik and Beringer contend that the FTC failed to meet its burden of proof on summary judgment. They challenge the survey results of the FTC's expert and assert that opinions from their own experts created a fact issue for trial. We disagree with these contentions.

The FTC's summary judgment evidence included voluminous examples of the Stefanchik advertising and telemarketing materials. The evidence gave the net impression that by working only five to ten hours per week, a consumer easily could earn $10,000 per month using Stefanchik's method to broker deals in the paper business. Consumers were promised that saleable paper was easily discovered and that they would have access to competent personal coaches to guide them in the business. However, the FTC submitted declarations from multiple individuals who averred that, upon purchasing Stefanchik's program, they discovered it was virtually impossible to locate privately held mortgages that could be re-sold within the short time period promised by the marketing materials and that the coaches Stefanchik provided to assist them were of little help.

The FTC's survey results, which were compiled by a marketing expert from American University, were consistent with the individual declarations. The survey was sent to a random sample of 1,002 customers. Out of 380 responses indicating

---

[6]15 U.S.C. § 45(a)(1).

[7]*Gill*, 265 F.3d at 950 (citation omitted).

[8]453 F.3d 1196, 1200 (9th Cir. 2006).

the consumer had purchased the program and had not received a refund, only one person reported buying or selling at least one mortgage and making money on the deal. Approximately 92% of the respondents said they made no money from the program, and only 6% said their personal coach was useful or very useful.

The FTC's evidence further included a declaration from Amanda Schaufler, a former Stefanchik coach with no prior real estate experience. Schaufler stated that many of her customers complained that they were told they could make money quickly and recoup their payment for the program before their credit card bills became due. She stated that in reality few customers made money using the Stefanchik Program, and that for those who did, it took far more than five to ten hours per week and always more than 30 days. She further stated that Stefanchik knew that sales representatives were creating unrealistic expectations and overselling the program because, in addition to the existence of documented complaints in the company database, she and other coaches informed Stefanchik about their concerns that sales representatives were misleading customers.

Finally, the FTC presented evidence from one of its investigators who examined almost 8,000 customer records in Beringer's database, including notes made by coaches about customer contact. The investigator found that the notes showed 153 customers had submitted deals to potential paper buyers. Out of that total, 68 had their deals rejected, 77 did not have conclusive comments regarding either acceptance or rejection, and only 8 customers had successfully completed a deal.

Stefanchik and Beringer complain that the district court improperly relied on the FTC's expert and survey results because the defendants introduced opinions from two experts who criticized the FTC's survey methodology. These oppos-

ing experts opined that the FTC's survey was biased and unreliable. We find no fact issue created, however.

[2] In order to avoid summary judgment, a non-movant must show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in his favor. *Anderson v. Liberty Lobby, Inc.*[9] A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment. *Galen v. County of Los Angeles*.[10] Here, Stefanchik and Beringer contest the methodology of the FTC's survey and assert that issues of fact exist, but they do not contest the truth or validity of the individual responses reported in the survey. They offered no competent affirmative evidence of their own, either in the form of survey results, contrary consumer declarations, sworn affidavits, or testimony, to identify consumers who were able to make substantial amounts of money using the Stefanchik method as claimed in the marketing materials.

[3] Stefanchik asserts in his pro se brief that he conducted his own survey of fifty consumers, which purportedly provides a more accurate picture of his program than the FTC's survey. He cites no record evidence in support of his argument, however, and his bald assertion is unavailing.[11] The FTC was not required to show that all consumers were deceived, *see FTC v. Figgie International, Inc.*,[12] but it offered substantial evidence that the marketing claims used to

---

[9]477 U.S. 242, 257, 106 S. Ct. 2505, 2514 (1986).

[10]477 F.3d 652, 658 (9th Cir. 2007); *see also FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997) ("Once the FTC has made a prima facie case for summary judgment, the defendant cannot rely on general denials; she must produce significant probative evidence that demonstrates that there is a genuine issue of material fact for trial.").

[11]*See Galen*, 477 F.3d at 658.

[12]994 F.2d 595, 605-06 (9th Cir. 1993); *see also FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 572 (7th Cir. 1989) ("[T]he FTC need not prove that every consumer was injured. The existence of some satisfied customers does not constitute a defense under the FTCA.").

sell Stefanchik's program were deceptive and misleading to an overwhelming number of consumers. Given the voluminous evidence showing that very few people made money using the Stefanchik Program as promised in the advertising materials and telemarketing pitches, or were satisfied with their personal coaches, and the absence of significantly probative contrary evidence from Stefanchik and Beringer, we conclude that the district court correctly granted summary judgment on the FTC Act claim because the marketing material made misrepresentations in a manner likely to mislead reasonable consumers.[13]

**[4]** The same conclusion holds true for the district court's finding that the defendants violated the TSR. Congress directed the FTC to create rules barring deceptive telemarketing acts and practices.[14] In response to this directive, the TSR prohibits "any seller or telemarketer" from misrepresenting "[a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer."[15] It further prohibits both sellers and telemarketers from "[m]aking a false or misleading statement to induce any person to pay for goods or services . . . ."[16] As we concluded above, the representations made about the Stefanchik Program were materially misleading insofar as they misrepresented consumers' earning potential and the availability of coaches, and those misrepresentations made via telemarketing were thus subject to enforcement as violations of both the TSR and the FTC Act.[17]

**[5]** Beringer and Stefanchik contend that they are not liable for telemarketing claims made by Atlas, which is an indepen-

---

[13]*See Cyberspace.com*, 453 F.3d at 1201.

[14]15 U.S.C. § 6102(a)(1).

[15]16 C.F.R. § 310.3(a)(2)(iii).

[16]16 C.F.R. § 310.3(a)(4).

[17]*See* 15 U.S.C. § 6105(b) (permitting the FTC to enforce violations of the TSR as though they were violations of the FTC Act).

dent legal entity based in Salt Lake City, Utah. They assert that they made no telemarketing calls, and that Atlas and Ely were solely responsible for the telemarketing scripts and the actions of the sales representatives. We are not persuaded. As noted above, the TSR applies to "any seller or telemarketer."[18] A "seller" is defined as "any person who, in connection with a telemarketing transaction, provides, offers to provide, *or arranges for others to provide* goods or services to the customer in exchange for consideration."[19] Here, it is undisputed that Stefanchik, on behalf of Beringer, entered into an agreement with Ely and Atlas for Atlas to conduct the telemarketing and sales of the Stefanchik Program. The record shows that Stefanchik retained authority to review and approve all marketing materials and made the decision as to what products were sold through the program. Stefanchik's counsel further reviewed the telemarketing scripts. We conclude that the district court correctly found Stefanchik and Beringer to be sellers under the TSR and properly granted summary judgment on this issue.

## B.

[6] A related issue is the corporate and individual liability of Beringer and Stefanchik, respectively. We conclude that the district court correctly determined that Beringer was subject to liability as a principal for the actions of Atlas as its agent. Under the FTC Act, a principal is liable for the misrepresentations of his agent acting within the scope of the agent's actual or apparent authority. *Southwest Sunsites, Inc. v. FTC*.[20] The record shows that Atlas acted with at least the apparent, and likely actual, authority of Beringer. Atlas used the name "The Stefanchik Organization" to advertise and sell products and services for Stefanchik and Beringer as its sole business.

---

[18]16 C.F.R. § 310.3(a)(2)(iii).

[19]16 C.F.R. § 310.2(z) (emphasis added).

[20]785 F.2d 1431, 1438 (9th Cir. 1986); *see also Goodman v. FTC*, 244 F.2d 584, 592 (9th Cir. 1957).

Stefanchik's picture and signature appeared on much of the marketing materials, which was subject to Stefanchik's review and approval. Furthermore, Stefanchik acknowledged that consumers often perceived Atlas and his company as one seamless operation. The lines between Atlas and Beringer were blurred to such an extent that Atlas's conduct and representations had at least the apparent imprimatur of Beringer.[21]

**[7]** Stefanchik contends that the FTC failed to prove he is liable in his individual capacity. An individual will be liable for corporate violations of the FTC Act if (1) he participated directly in the deceptive acts *or* had the authority to control them and (2) he had knowledge of the misrepresentations, was recklessly indifferent to the truth or falsity of the misrepresentation, or was aware of a high probability of fraud along with an intentional avoidance of the truth.[22] The evidence showed that Stefanchik controlled all the business activity of Beringer as the owner, sole shareholder, director, and manager of the company. He also had the authority—both individually and through counsel—to control the marketing activity and representations about his product. He was also at least recklessly indifferent to the truth or falsity of the sales claims. There was evidence that Stefanchik was advised by his counsel after reviewing the telemarketing scripts that he needed to substantiate the sales claims. He was also informed by Amanda Schaufler and other coaches that the sales representatives were misleading consumers. The district court correctly determined that Stefanchik should be personally liable.

## C.

**[8]** We next turn to Stefanchik's and Beringer's contention

---

[21]*See Goodman*, 244 F.2d at 592-93 ("The misrepresentations [the agents] made were at least within the apparent scope of their authority and part of the inducement by which were made sales that inured to the benefit of the corporate petitioner." (internal quotation and citation omitted)).

[22]*Cyberspace.com*, 453 F.3d at 1202.

that the evidence does not support the district court's finding of over $17 million in damages. The district court has broad authority under the FTC Act to "grant any ancillary relief necessary to accomplish complete justice," including the power to order restitution. *FTC v. Pantron I Corp.*[23] We review the district court's grant of equitable monetary relief for an abuse of discretion. *Grosz-Salomon v. Paul Revere Life Ins. Co.*[24]

[9] We stress again that on summary judgment the movant must show the absence of a genuine issue of material fact, while the non-movant must meet that showing with affirmative evidence to create a fact issue.[25] Here, the FTC presented a declaration from Atlas' president that the net sales for Atlas during the two and one-half years that it processed sales for Stefanchik were $17,775,369. It also submitted a report from Atlas' accounting database reporting this amount. Stefanchik and Beringer have offered no affirmative evidence whatsoever to controvert this amount.

[10] We are unpersuaded by the defendants' assertion that they should not be liable for the full amount of Atlas' sales because Atlas paid them only a percentage as a royalty. Equity may require a defendant to restore his victims to the status quo where the loss suffered is greater than the defendant's unjust enrichment.[26] Moreover, because the FTC Act is designed to protect consumers from economic injuries, courts have often awarded the full amount lost by consumers rather than limiting damages to a defendant's profits.[27] Stefanchik and Beringer were the driving force behind the marketing scheme for the Stefanchik Program, with authority to control

---

[23]33 F.3d 1088, 1102 (9th Cir. 1994).

[24]237 F.3d 1154, 1163 (9th Cir. 2001).

[25]*Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 257, 106 S. Ct. at 2514.

[26]*See, e.g.*, *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 606-07 (9th Cir. 1993).

[27]*See FTC v. Febre*, 128 F.3d 530, 536 (7th Cir. 1997).

its key components, and they benefitted significantly from the sales induced by material misrepresentations. We conclude that the district court did not abuse its discretion by holding the defendants liable for the full amount of loss incurred by consumers.

The district court's judgment is AFFIRMED.