**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 30 2012

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | No. 11-15330 |
| Plaintiff - Appellee, | D.C. No. 3:10-cv-00022-WHA |
| v. | |
| INC21.COM CORPORATION, DBA FaxFaster.com, DBA GlobalYP, DBA GoFaxer.com, DBA INC21, DBA Inc21 Communications, DBA Inc21.net, DBA Jumpage Solutions, DBA Metro YP, DBA NetOpus; JUMPAGE SOLUTIONS INCORPORATED; GST U.S.A., INC.; ROY YU LIN, individually and as and officer and director of the corporate defendants; JOHN YU LIN, individually and as an officer and director of the corporate defendants, | MEMORANDUM[*] |
| Defendants - Appellants. | |

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted February 17, 2012
San Francisco, California

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: FISHER and IKUTA, Circuit Judges, and SEABRIGHT, District Judge.[**]

Defendants Inc21.com Corporation, Jumpage Solutions, Inc., GST U.S.A., Inc., Roy Yu Lin and John Yu Lin appeal the judgment of the district court in this civil enforcement action by the Federal Trade Commission (FTC) arising from the defendants' practice of charging consumers through local phone bills for online services they never agreed to purchase. On cross motions for summary judgment, the district court concluded that the defendants engaged in deceptive and unfair billing practices in violation of § 5 of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45, and the Telemarketing Sales Rule, 16 C.F.R. part 310. The district court imposed remedies under § 13(b) of the FTC Act, 15 U.S.C. § 53(b), including ordering the defendants to pay restitution to injured consumers in the amount of $38 million. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. We reject the FTC's argument that the defendants failed to timely appeal from the summary judgment order and the order on pending motions. The FTC filed a timely motion to amend the judgment. *See* Fed. R. Civ. P. 59(e). That motion tolled the time for filing a notice of appeal until entry of an order disposing

---

[**] The Honorable J. Michael Seabright, United States District Judge for the District of Hawaii, sitting by designation.

2

of the motion. *See* Fed. R. App. P. 4(a)(4)(A)(iv). The district court disposed of the FTC's motion on January 25, 2011, when it filed the order implementing the distribution plan. *See Campbell Indus., Inc. v. Offshore Logistics Int'l, Inc.*, 816 F.2d 1401, 1404 (9th Cir. 1987) ("Only when a judge acts in a manner which clearly indicates an intention that the act be final, and a notation of that act has been entered on the docket, does the time for appeal begin to run."). The defendants filed a timely notice of appeal within 60 days thereafter. *See* Fed. R. App. P. 4(a)(1)(B)(ii).

2.      We reject each of the defendants' challenges to the monetary relief ordered by the district court. Contrary to the defendants' arguments, § 13(b) authorizes monetary relief, *see FTC v. Stefanchik*, 559 F.3d 924, 931-32 (9th Cir. 2009) (restitution); *FTC v. Neovi, Inc.*, 604 F.3d 1150, 1159-60 (9th Cir. 2010) (disgorgement), *as amended*; *FTC v. Gill*, 265 F.3d 944, 954, 958 (9th Cir. 2001) (restitution and disgorgement); *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102-03 & n.34 (9th Cir. 1994) (restitution and disgorgement), including consumer redress remedies, *see, e.g.*, *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir. 1982). The defendants have identified no intervening authority that would permit us to disregard these binding decisions. *See Miller v. Gammie*, 335 F.3d 889, 893, 899 (9th Cir. 2003) (en banc).

3

3.     Circuit precedent also forecloses the defendants' argument that § 13(b) is limited to *equitable* restitution, measured by the gain to the defendants, rather than legal restitution, measured by the loss to consumers. *See Stefanchik*, 559 F.3d at 931-32 (holding "the district court did not abuse its discretion by holding the defendants liable for the full amount of loss incurred by consumers"); *see also Singer*, 668 F.2d at 1112-13 (holding that, because § 13(b) vests a court with equitable jurisdiction, it empowers the court to provide complete relief, including "any ancillary relief necessary to accomplish complete justice").[1]

4.     The district court did not abuse its discretion by directing the FTC to provide restitution through a pro rata distribution plan rather than a notice-and-claim procedure. *See United States v. Alisal Water Corp.*, 431 F.3d 643, 654 (9th Cir. 2005) (reviewing a district court's choice of remedies for an abuse of discretion). The court's approach was reasonable in light of the relative advantages of each option, including the costs of administering relief and problems of proof. The defendants have made no showing that the pro rata distribution plan will overcompensate some consumers. *See Stefanchik*, 559 F.3d at 931. Even if

---

[1] The underlying district court order in *Stefanchik* makes clear that relief was awarded under § 13(b) of the FTC Act, not § 19. *See FTC v. Stefanchik*, No. C04-1852RSM (W.D. Wash. Apr. 3, 2007) (final judgment and order for permanent injunction and other equitable relief), at p. 4, ¶ 23.

they could make that showing, the district court's choice of remedy remains reasonable under the circumstances.

5.      The defendants have not shown that the restitution ordered by the district court constitutes a "punitive" remedy.  Even if they could make that showing, § 13(b) would not preclude the remedy.  It is true that punitive damages are not permitted under § 19 of the FTC Act.  *See* 15 U.S.C. § 57b(b);  *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 607-08 (9th Cir. 1993) (per curiam).  Section 13(b), however, contains no such limitation, and § 19 expressly provides that "[n]othing in this section shall be construed to affect any authority of the Commission under any other provision of law."  15 U.S.C. § 57b(e).

6.      The exclusionary rule does not apply to the evidence obtained pursuant to the search and seizure warrants authorized through Postal Inspector Andrew Wong's affidavits.  *Grimes v. Commissioner*, 82 F.3d 286, 288-90 (9th Cir. 1996), held that the exclusionary rule did not apply in federal civil tax proceedings to evidence illegally seized by the Federal Bureau of Investigation (FBI) because there was no preexisting agreement between the FBI and the Internal Revenue Service (IRS) under which the FBI agreed to share investigatory information with the IRS.  That reasoning applies here.  Wong's investigation was conducted jointly by the Postal Inspection Service and the IRS, not the FTC.  The

investigation involved criminal allegations of mail fraud, wire fraud, conspiracy, money laundering and tax fraud under 18 U.S.C. §§ 371, 1341, 1343, 1956, and 1957, and 26 U.S.C. §§ 7201, 7203 and 7206(1), not the § 5 and Telemarketing Sales Rule civil violations at issue here. The defendants do not assert that the Postal Inspection Service had a preexisting agreement to share investigatory information with the FTC. The exclusionary rule therefore does not apply.

The defendants, moreover, have made no showing that any evidence was seized unlawfully. Wong misspoke when he stated in his affidavits that Inc21 did not have *a single customer* that knowingly authorized being billed for the defendants' products. His misstatements, however, were not material to the existence of probable cause because, even if a few customers knowingly agreed to purchase the services, customers overwhelmingly did not do so. *See United States v. Hammett*, 236 F.3d 1054, 1058 (9th Cir. 2001) (misstatements "will not invalidate the entire warrant provided 'there remains sufficient content in the warrant affidavit to support a finding of probable cause'" (quoting *Franks v. Delaware*, 438 U.S. 154, 172 (1978))).

7. The district court did not abuse its discretion by admitting the report of the FTC's expert, Dr. Howard Marylander. Marylander's survey of 1,087 consumers asked, "Did you or your company agree to purchase any Internet

6

services from (PRODUCT NAME)?" Almost 97 percent responded that they had not agreed to purchase services, a finding that the district court relied on to conclude that the defendants' billing practices were deceptive. The defendants contend Marylander's question was misleading because consumers would have understood him to be asking whether they purchased internet *access* services, rather than the online business services. The district court rejected this argument, stating that "the survey questions presented to interviewees also stated the name of the specific product supposedly purchased by each customer," which "disarms any criticisms directed at the phrase 'Internet services.'" *FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1002-03 (N.D. Cal. 2010). We agree.

8.     To establish that the defendants' billing practices were likely to mislead consumers, the district court relied on Marylander's finding that "only five percent of these 'customers' were even aware that charges for defendants' products had been placed on their telephone bills." *Id.* at 1001. The defendants challenge that finding, arguing that 70 percent of those surveyed had canceled the service and received a refund, showing that they were in fact aware of the charges. The defendants' 70 percent claim, however, is unsupported by the record. When we asked defense counsel to substantiate the 70 percent claim at oral argument, counsel pointed us to a document that fails to do so. The district court did not err.

7

9. The district court properly calculated the amount of restitution. The court awarded "restitution in the full amount of funds lost by consumers." *Id.* at 1011. The court calculated this amount by starting with the defendants' gross collections through local exchange carrier (LEC) billing, subtracting refunds paid by LECs and billing aggregators and subtracting payments by 56 customers who actually purchased the defendants' services. *See id.* at 1011-12. This yielded a reasonable approximation of consumer losses of $37,970,929.57. *See id.* The defendants offered no evidence to rebut the FTC's approximation of loss. *See id.* at 1012-13.

The defendants' challenges to the district court's loss calculation are without merit. The FTC's approximations of loss were supported by properly authenticated billing records from aggregators. The defendants offered no evidence to substantiate their claims that the FTC's approximations included consumers who received refunds or were satisfied with the defendants' products. *See Stefanchik*, 559 F.3d at 931. The defendants' reliance on *FTC v. Verity International, Ltd.*, 443 F.3d 48, 66-68 (2d Cir. 2006), is misplaced; whereas the Second Circuit limits § 13(b) relief to equitable restitution, the Ninth Circuit permits restitution measured by the loss to consumers. *See Stefanchik*, 559 F.3d at 931-32. Finally, the defendants were not prejudiced by the FTC's reply-brief

8

revisions to its approximations of consumer loss because, as the district court explained, they had ample opportunity to challenge the FTC's estimates and failed to do so.

10.    The district court did not abuse its discretion by imposing limits on the defendants' access to frozen assets to pay attorney's fees.  The court permitted the defendants to withdraw reasonable sums from frozen assets for attorney's fees, even though available funds were insufficient to compensate injured consumers. The court acted within its discretion by declining to release additional funds.  *See FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347-48 (9th Cir. 1989); *see also Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 768, 775 (9th Cir. 1995); *FSLIC v. Ferm*, 909 F.2d 372, 375 (9th Cir. 1990).

**AFFIRMED.**