FEDERAL TRADE COMMISSION,
Plaintiff–Appellee,

v.

BURNLOUNGE, INC., a Corporation
and Juan Alexander Arnold, an in-
dividual, Defendants–Appellants,

and

John Taylor, an individual and ROB
DEBOER, an individual,
Defendants.

Federal Trade Commission,
Plaintiff–Appellee,

v.

Burnlounge, Inc., a Corporation;
et al., Defendants,

and

John Taylor, an individual,
Defendant–Appellant.

Federal Trade Commission,
Plaintiff–Appellant,

v.

Rob Deboer, an individual,
Defendant–Appellee,

and

John Taylor, an individual, Defendant,
Burnlounge, Inc., a Corporation and
Juan Alexander Arnold, an individual,
Defendants.

Nos. 12–55926, 12–56197, 12–56228.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 2013.

Filed June 2, 2014.

Chris M. Couillou, Federal Trade Commission, Atlanta, GA, Burke W. Kappler, John F. Daly, Esquire, Deputy General Counsel for Litigation, Federal Trade Commission, Washington, DC, Thomas Syta, Federal Trade Commission, Los Angeles, CA, for Plaintiff–Appellee.

Efrat M. Cogan, Esquire, Joshua Mizrahi, Esquire, Lawrence B. Steinberg, Esquire, Michael Lawrence Wachtell, Esquire, Buchalter Nemer PLC, Los Angeles, CA, for Defendants–Appellants.

Before: PREGERSON, BERZON, and CHRISTEN, Circuit Judges.

## MEMORANDUM [*]

Appellants BurnLounge, Inc., Juan Alexander Arnold, and John Taylor appeal the district court's order of monetary awards against them as improper or, in the alternative, excessive. The FTC in a cross-appeal argues the district court's disgorgement award against Rob DeBoer was too low and was erroneously calculated. We review a district court's order granting equitable monetary relief for abuse of discretion. *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir.2009). We have jurisdiction over this appeal and cross-appeal under 28 U.S.C. § 1291. We affirm in part and vacate and remand in part.[1]

■ 1) The district court ruled that defendants BurnLounge and Arnold violated § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). It ordered a permanent injunction and payment of $16,245,799.70. This court and others have repeatedly recognized that § 13(b) of the FTCA, 15 U.S.C. § 53(b), "gives the federal courts broad authority to fashion appropriate remedies for violations of the Act.... [And that authority] is not limited to the power to issue an injunction; rather, it includes the 'authority to grant any ancillary relief necessary to accomplish complete justice.'" *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir.1994) (quoting *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir.1982)); *see also Stefanchik*, 559 F.3d at 931; *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 571 (7th Cir.1989) (col-

lecting other circuits' cases). Such ancillary relief may include restitution or disgorgement. *See Pantron I*, 33 F.3d at 1102, 1103 n. 34. The district court did not abuse its discretion by ordering monetary awards under § 13(b) of the FTCA.

2) The district court found BurnLounge liable for the total amount of consumer harm. The FTC provided evidence that the amount of consumer harm was $21.4 million. BurnLounge's damages expert, David Nolte, testified to dollar values for the merchandise BurnLounge sold, but his testimony was poorly supported. The district court rejected both parties' calculations and performed its own calculation, finding the total amount of consumer harm was $16,245,799.70. We agree with most of the district court's calculation but we remand for clarification.

■ We do not take issue with the district court's explanation of the calculations it made to measure the consumer harm attributable to sales of Exclusive and VIP packages as recruitment vehicles. It was not an abuse of discretion to use the percentage of non-Moguls who purchased Exclusive and VIP package as a proxy for the percentage of Moguls who would have found enough value in those packages to purchase one without the opportunity to earn cash rewards.

But in calculating the harm attributable to the purchases of Basic packages, the district court multiplied the total percentage of non-Moguls who bought packages (3.4%) and the number of non-Moguls who bought at least one album (31.7%) to get 10.8%.[2] The district court used 10.8% as a

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. In a separate published opinion we discuss BurnLounge's, Arnold's, and Taylor's appeals from the district court's holding that BurnLounge was an illegal pyramid scheme, and

BurnLounge and Arnold's appeal from the district court's denial of their joint motion to exclude the FTC expert's testimony.

2. We note that, in doing so, the district court seems to have inadvertently transposed the

proxy for the percentage of Moguls who would have found enough value in the Basic package to purchase it without the opportunity to earn cash rewards. It is not clear why the district court based its proxy on the number of non-Moguls who bought at least one album. We remand for the district court to clarify the basis for the calculation of consumer harm it attributed to sales of BurnLounge's Basic packages or to redo the calculation.

We also remand for the district court to explain the "BurnLounge Presents" fee portion of the consumer harm calculation.

■ 3) The district court found Arnold "was the CEO and Chairman of the Board of Directors of BurnLounge;" that he owned 43.7% of the voting stock in Burn-Lounge; that he "was the originator of the BurnLounge concept;" that he "spearheaded the making of the compensation plan;" and that he was referred to as the "boss" or "ultimate authority." These findings were supported by the record. The district court held Arnold jointly and severally liable with BurnLounge for the total amount of consumer harm ($16,245,799.70), on the understanding that the FTC would use that award to reimburse individuals who lost money in the BurnLounge scheme. It alternatively held that if the money was not used to reimburse customers of BurnLounge, then Arnold must disgorge $1,664,566.45, the amount Arnold personally received from the BurnLounge scheme. Given Arnold's central involvement in the scheme, the evidence amply supports the finding that he either had knowledge or was at least recklessly indifferent to the truth of the misrepresentations and omissions BurnLounge made to consumers. See FTC v. Affordable Media, 179 F.3d 1228, 1235 (9th Cir.1999). Therefore, the district court did not abuse its

discretion by holding Arnold jointly and severally liable with BurnLounge for the total amount of consumer harm. See Stefanchik, 559 F.3d at 927, 930–31; FTC v. Publ'g Clearing · House, Inc., 104 F.3d 1168, 1170–71 (9th Cir.1997).

■ The disgorgement award ordered in the alternative was also appropriate and "include[d] all gains flowing from the illegal activities." SEC v. JT Wallenbrock & Assocs., 440 F.3d 1109, 1114 (9th Cir.2006) (citation and internal quotation marks omitted). The award against Arnold properly included: Arnold's salary ($568,-941.95); Arnold's bonuses ($202,500); and Arnold's reimbursement for expenses ($893,124.50). The district court did not abuse its discretion when it calculated the disgorgement award attributable to Arnold.

4) The district court found that, given Taylor's involvement in raising the capital necessary to create BurnLounge, his ownership of stock, and his position in the organization as "Retailer 001," it was likely that he had actual knowledge or was at least recklessly indifferent to the truth of the misrepresentations made to consumers. See Affordable Media, 179 F.3d at 1235. It ordered Taylor to disgorge "all monies and other items of enrichment which he obtained from BurnLounge's operations. That amount, as previously noted, is $620,139.64." The disgorgement amount against Taylor did not include deductions for expenses and was proper. See JT Wallenbrock, 440 F.3d at 1113–14.

■ 5) The district court found that DeBoer "was not an employee, officer, decision maker or shareholder of [Burn-Lounge]." But it found that he gave presentations at some BurnLounge recruitment events and that he made misleading income claims to consumers. The

decimal point; 3.4% multiplied by 31.7% equals 1.08%.

district court acknowledged that DeBoer received $908,293.69 from BurnLounge, but concluded that "as a matter of equity the Court would allow [DeBoer] to deduct his expenses." It ordered DeBoer to disgorge $150,000. Our case law regarding disgorgement is clear: expenses are not deducted from total gains when disgorgement is calculated. *Id.* We grant the FTC's cross-appeal and vacate and remand the disgorgement award against DeBoer for recalculation.

We **AFFIRM** the district court's judgment holding Arnold jointly and severally liable with BurnLounge for the total amount of consumer harm. We **AFFIRM** the disgorgement amount ordered against Arnold in the alternative. We also **AFFIRM** the disgorgement award against Taylor. We **REMAND** the $16,245,799.70 award against BurnLounge for clarification regarding: (1) the calculation of consumer harm attributable to sales of BurnLounge's Basic packages, and (2) the district court's calculation of consumer harm attributable to "Burn-Lounge Presents" fees. We **VACATE and REMAND** the $150,000 disgorgement award against DeBoer for recalculation. The panel retains jurisdiction. Appellants BurnLounge, Arnold, and Taylor, and Appellee DeBoer shall bear the costs of appeal.

**AFFIRMED in part, VACATED and REMANDED in part.**