**NOT RECOMMENDED FOR PUBLICATION**
File Name: 17a0228n.06

No. 15-4426

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Apr 19, 2017
DEBORAH S. HUNT, Clerk

COMMODITY FUTURES TRADING
COMMISSION,

    Plaintiff-Appellee,

v.

BRADLEY A. MIKLOVICH,

    Defendant-Appellant.

_____/

)
)
)
)
)
)
)
)
)
)
)

On Appeal from the United States
District Court for the Northern
District of Ohio

**Before: GUY, CLAY, and WHITE, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.**

Bradley Miklovich appeals from the entry of summary judgment against him in this enforcement action brought by the Commodity Futures Trading Commission (CFTC) for violations of the Commodity Exchange Act (CEA) and CFTC regulations. *See* 7 U.S.C. §§ 6b(a)(1)(A) and 6c(b); 17 C.F.R. §§ 166.2 and 33.10. The only issue—raised for the first time on appeal—is Miklovich's claim that the district court's award of restitution was not authorized under 7 U.S.C. § 13a-1(d)(3)(A). The district court's judgment is affirmed.

**I.**

Miklovich does not challenge the district court's determination that he committed the alleged violations while working for Rice Investment Company. Rice Investment (a registered "introducing broker") was a small brokerage firm that placed commodity-futures trades in customer accounts held by ADM Investor Services, Inc. (a registered "futures commission merchant"). Miklovich (a registered "associated person" of Rice) had authority to receive and place orders from customers, but he did not have authority to make discretionary trades in any customer accounts held by ADM.

The evidence showed that during one week in July 2013, Miklovich placed twenty-three unauthorized soybean and soybean meal futures trades in the accounts of two customers and concealed that activity such that false daily reports and summaries were generated. Those trades were highly unprofitable, and quickly came to light because of a "margin call." Miklovich's initial attempts at deflection were unsuccessful, and his employment was terminated after he failed to return to work. Rice Investment unwound the unauthorized trades and paid a total of $566,360.06 to ADM to restore the balances in the affected customers' accounts. There was no dispute concerning the amount of the losses that Rice was obligated to cover.[1]

The CFTC brought this enforcement action against Miklovich pursuant to 7 U.S.C. § 13a-1(a), discovery was conducted, and cross-motions for summary judgment were filed. Granting summary judgment to the CFTC and denying summary judgment to Miklovich, the district court entered permanent injunctive relief, imposed a civil money penalty of $100,000, and ordered restitution to be paid to Rice Investment in the amount of $566,360.06. The district court also

---

[1] By definition, it is the "futures commission merchant"—not the "introducing broker"—that "accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom[.]" 7 U.S.C. § 1a(28)(A)(i)(II); *see also id.* at § 1a(31)(A)(i)(II).

denied as moot Miklovich's motion for sanctions, which argued, in part, that no adverse inference should be drawn from the assertion of his Fifth Amendment privilege during his deposition. Judgment was entered accordingly. Only the restitution award is at issue on appeal.

## II.

A district court's decision granting summary judgment is reviewed *de novo*, as is a decision denying a cross-motion for summary judgment on purely legal grounds. *McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004). Questions of statutory interpretation are also reviewed *de novo*. *Elgharib v. Napolitano*, 600 F.3d 597, 601 (6th Cir. 2010). However, this court generally will not review an argument that is raised for the first time on appeal. *See Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 614-15 (6th Cir. 2014); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008); *Foster v. Barilow*, 6 F.3d 405, 407-09 (6th Cir. 1993).

### A.     Waiver

Miklovich contends that 7 U.S.C. § 13a-1(d)(3)(A) must be interpreted to permit only equitable restitution—as opposed to legal restitution—in an enforcement action brought under the CEA. As a result, he claims that it was error to award any restitution in this case because the determination was based on losses incurred in the absence of evidence that he received any unjust enrichment or possessed any customer funds in connection with the unauthorized trades. The CFTC insists that Miklovich is wrong, but argues strenuously against reaching these issues because they were not preserved for appeal.

Although Miklovich opposed the CFTC's request for restitution, the record is clear that he did so on the grounds that Rice Investment should be found strictly, vicariously, and/or jointly and severally liable for the losses. He concedes now that "the distinctions between restitution

versus money damages and restitution at equity versus restitution at law admittedly were not drawn out."  In fact, Miklovich has not pointed to any arguments that would have given the district court or the CFTC notice of the position he now takes, or that provided "'some minimal level of argumentation in support' of that position." *In re Anheuser-Busch Beer Labeling Mktg. & Sales Pracs. Litig.*, 644 F. App'x 515, 527 (6th Cir. 2016) (quoting *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009)).  Because the record shows that the equitable-versus-legal restitution arguments were not raised in the district court, the arguments are deemed waived.  Miklovich, through new counsel, asks the court to consider the forfeited arguments anyway.

## B.      Exceptions

This court has deviated from the general rule "only when it 'would produce a plain miscarriage of justice' or when there are exceptional circumstances that militate against finding a waiver." *Hayward*, 759 F.3d at 615 (quoting *Scottsdale*, 513 F.3d at 552).  We should "address an issue presented with sufficient clarity and requiring no factual development if doing so would promote the finality of litigation in this case." *In re Morris*, 260 F.3d 654, 664 (6th Cir. 2001).  We also may do so if it "would serve an overarching purpose other than simply reaching the correct result in this case." *Id*. (citing *Foster*, 6 F.3d at 408).  Miklovich asserts that his arguments are primarily questions of statutory interpretation, resolution of which are beyond doubt, and that allowing the substantial award of restitution to stand would result in a plain miscarriage of justice.

Miklovich relies heavily by analogy on the Supreme Court's holding that the term "equitable relief" in § 502(a)(3) of ERISA  "must refer to 'those categories of relief that were *typically* available in equity.'" *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204,

210 (2002) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)). *Knudson* explained that it "must mean *something* less than *all* relief," which could not mean whatever relief a court in equity was empowered to provide (which could include legal remedies) or else the modifier would be superfluous. *Id.* at 209 (quoting *Mertens*, 508 U.S. at 258 n.8). This court elaborated on the distinction in addressing the scope of equitable relief under ERISA, explaining that: "A court awards equitable restitution when it imposes a constructive trust or lien on 'particular funds or property in the defendant's possession' but legal restitution when it holds the defendant liable for a sum of money." *Cent. States SE and SW Areas Health and Welfare Fund v. First Agency, Inc.*, 756 F.3d 954, 960 (6th Cir. 2014) (quoting *Knudson*, 534 U.S. at 214). Notably, ERISA does not define what constitutes "appropriate equitable relief" and the Court in *Knudson* explained that ERISA's "carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Id.* at 209 (quoting *Mertens*, 508 U.S. at 254) (internal quotation marks omitted).

Before § 13a-1(d)(3)(A) was added to the civil penalties provision of the CEA in 2010, it was nonetheless recognized that the statutory authority provided by § 13a-1(a) to issue an injunction carried with it the power to order ancillary equitable relief such as restitution and disgorgement. *See CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1344 (11th Cir. 2008) (citing cases). The court in *Wilshire* concluded, however, that because this power was limited to awarding equitable restitution, it was error to have based the restitution award on the amount of money that the customers lost instead of the amount that the defendants wrongfully gained by their misrepresentations. *Id.* at 1345; *but see CFTC v. Millenium Trading Grp. Inc.*, No. 07-cv-11626, 2007 WL 2639474, at *10-12 (E.D. Mich. Sept. 6, 2007) (finding court had authority

under § 13a-1(a) to order ancillary equitable relief including ordering full restitution to customers with interest).   Although *Wilshire* reached the conclusion Miklovich seeks here, *Wilshire* addressed the scope of a court's authority to grant ancillary equitable relief—not a question of statutory interpretation.[2]

A three-step framework applies to questions of statutory interpretation:  beginning first with "a natural reading of the full text" for its plain meaning, then "the common-law meaning of the statutory terms," and "finally, consideration of the statutory and legislative history for guidance."  *Elgharib*, 600 F.3d at 601 (citations omitted).  The statutory language in question, added to the "civil penalties" provisions of § 13a-1(d), provided as follows:

(3)  Equitable Remedies

In any action brought under this section, the Commission may seek, and the court may impose, on a proper showing, on any person found in the action to have committed any violation, equitable remedies including—

(A)  restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses); and

(B)  disgorgement of gains received in connection with such violation.

7 U.S.C. § 13a-1(d)(3).   Miklovich's claim that this subsection must be interpreted to unambiguously authorize only restitution that would typically be available in equity is hardly beyond doubt.

Neither the fact that the section is titled "equitable remedies" nor that it describes the relief as "equitable remedies" is convincing because, unlike the ERISA provision at issue in

---

[2]Nor is it clear that this court would follow *Wilshire*'s reasoning, which relied, in part, on a Second Circuit decision concerning the scope of ancillary equitable relief available in an enforcement action under § 13(b) of the FTC Act. *See FTC v. Verity Int'l, Ltd*, 443 F.3d 48, 66-68 (2d Cir. 2006) (holding that "because the availability of restitution under § 13(b) of the FTC Act, to the extent it exists, derives from the district court's equitable jurisdiction, it follows that the district court may award only equitable restitution"); *but see FTC v. Bronson Partners, LLC,* 654 F.3d 359, 367-68 (2d Cir. 2011) (adhering to but questioning *Verity*); and *FTC v. Inc21.com Corp.*, 475 F. App'x 106, 110 (9th Cir. 2012) (disagreeing with *Verity* and holding that ancillary equitable relief under the FTC Act's § 13(b) authority permits restitution measured by the loss to customers).

*Knudson*, § 13a-1(d)(3) expressly defines what restitution is included within the scope of those equitable remedies. Moreover, the claim that the CEA only authorizes an award of restitution when the defendant was unjustly enriched or possessed identifiable funds subject to a constructive trust or lien is untenable. To read § 13a-1(d)(3) that way would contradict that restitution may be awarded to persons who sustained losses proximately caused by a violation of the CEA "in the amount of such losses." That would be nonsensical. Moreover, § 13a-1(d)(3)(A) must be read with the "equitable remedies" provided for in § 13a-1(d)(3)(B), which separately authorizes the court to order "disgorgement of gains received in connection with such violation." At least one court has held that the plain meaning of § 13a-1(d)(3)(A) authorizes the CFTC to seek restitution for persons who sustained losses proximately caused by the proven violations. *See CFTC v. U.S. Bank, N.A.*, No. 13-cv-2041-LRR, 2014 WL 6474183, at *36 (N.D. Iowa Nov. 19, 2014) (denying the defendant's motion for summary judgment on the CFTC's request for restitution in the amount of customer losses under § 13a-1(d)(3)(A)).

Miklovich has not shown that failure to consider the arguments he raises for the first time on appeal would result in a plain miscarriage of justice or that exceptional circumstances militate against finding a waiver. Nor would it promote the finality of the litigation in this case to address the purely legal issue of statutory interpretation since the CFTC did not have the opportunity to prove a basis for equitable restitution if Miklovich were to prevail. Finally, to the extent Miklovich argues that an overarching purpose is served by deciding whether § 13a-1(d)(3)(A) authorizes only restitution that would be available in equity, he has not shown there is a need for clarification in the law. The arguments are deemed waived, and this court will not exercise its discretion to consider them for the first time on appeal.

**AFFIRMED.**