**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HORPHAG RESEARCH LTD,
        *Plaintiff-Appellee,*

v.

LARRY GARCIA, dba
Healthierlife.Com,
        *Defendant-Appellant,*

and

MARIO PELLEGRINI, dba
Healthdiscovery.Com,
        *Defendant.*

No. 04-55373

D.C. No.
CV-00-00372-VAP

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Submitted October 16, 2006*
Pasadena, California

Filed January 9, 2007

Before: Harry Pregerson and Sidney R. Thomas,
Circuit Judges, and Louis F. Oberdorfer,** Senior Judge.

Opinion by Judge Pregerson

---

*This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Louis F. Oberdorfer, Senior United States District Judge for the District of Columbia, sitting by designation.

127

## COUNSEL

Larry Garcia, San Antonio, Texas, defendant-appellant pro se.

Marvin S. Gittes, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo., New York, New York, for the plaintiff-appellee.

## OPINION

PREGERSON, Circuit Judge:

We are called upon to consider, for a second time, Defendant Larry Garcia's use of Horphag Research Ltd's ("Horphag's") trademark Pycnogenol. In a previous appeal, we affirmed the district court's grant of judgment as a matter of law on Horphag's trademark infringement claims. *See Horphag Research Ltd. v. Pelligrini,* 337 F.3d 1036, 1042 (9th Cir. 2003). We vacated the district court's order on Horphag's trademark dilution claim and asked the district court to reconsider its decision in light of the Supreme Court's opinion in *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003). On remand, the district court granted Horphag's motion for summary judgment on its trademark dilution claim and reinstated its original attorneys' fees award. Defendant Larry Garcia, appealing in pro per, again challenges the district court's grant of summary judgment on Horphag's trademark dilution claim and the corresponding attorneys' fees award. We have juris-

diction under 28 U.S.C. § 1291, and we affirm the district court.

## I.   Factual and Procedural Background

The facts of this case are largely the same as those upon which we based our previous opinion, and we recount them only in brief detail here. In 1969, Dr. Jack Masquelier, a French professor of pharmacology, discovered a chemical antioxidant substance made from the bark of a French maritime pine tree. The substance supposedly assists in nutritional distribution and proper circulation. Around 1978, Masquelier brought the product to market under the name "Pycnogenol." Masquelier[1] received the trademark in France for the mark Pycnogenol in 1989.

Around 1987, Horphag began selling the pine bark extract outside of France under contractual relationship with Masquelier. Thereafter, things between Horphag and Masquelier went sour, and the two parties dissolved their relationship. In 1993, Horphag was granted the United States trademark for the mark Pycnogenol.[2] Since then, Horphag has made extensive efforts to control the quality of Pycnogenol and has invested heavily in research and marketing its product. Pycnogenol is now one of the fifteen most sold herbal supplements in the United States. Horphag has not authorized any other entity to use its mark.

---

[1]Masquelier has been associated with various corporations over the relevant period, but the names of the individual companies are irrelevant for our purposes. All references to Masquelier should be understood as references to the company through which Masquelier distributed his product. Likewise, Horphag's company has gone through numerous corporate iterations. We use "Horphag" to denote the various companies related to Horphag Research Ltd with which Masquelier, and later Garcia, dealt.

[2]All further references to Pycnogenol refer to Horphag's trademarked product unless otherwise noted.

Garcia was once a licensed dealer for Horphag and sold Horphag's products through his Internet site "healthierlife.com." In February 1999, Garcia stopped distributing products manufactured by Horphag and began selling products manufactured by Masquelier. One of the products Garcia sells is "Masquelier's Original OPCs," a supplement derived from grape pits that competes with Horphag's pine-bark-based supplement. Garcia claims that he stopped distributing for Horphag after he discovered that Masquelier's product, rather than Horphag's product, was the "true Pycnogenol."

Horphag contends that Garcia used the mark Pycnogenol as a "bait and switch" to induce customers to purchase his product, Masquelier's Original OPC. Garcia used the term Pycnogenol as a metatag[3] to lure would-be customers to his website. Once at the website, consumers could find information designed to educate prospective users about the debate over the "rightful ownership" of the Pycnogenol patent and trademark. Other parts of Garcia's website, however, were more problematic.

In several places, Garcia used the term Pycnogenol as a generic term, referring to both Horphag's product and Masquelier's product as Pycnogenol. Garcia attributes the results of research conducted on Horphag's Pycnogenol to Masquelier's product. For example, Garcia's website describes Masquelier's OPC as "a patented peak performance nutrient . . . among the best new weapons . . . to maintain overall good health for longer and longer periods of time." On the "Safety Factor" section of Garcia's healthierlife.com website, Garcia states "Pycnogenol studies carried out at the Pasteur Institute in Lyon, France, have shown it to be nontoxic to humans. . . . Pycnogenol should be viewed as a completely safe nutrient." Both of these statements are direct quotes from Dr. Steven Lamm and Gerald Secor Couzens' book, *Younger*

---

[3]A metatag is an indexing tool used by Internet search engines to determine which websites correspond to the search terms provided by a user.

*at Last* (1997), which makes explicit that the health and safety benefits to which it is referring attach to Horphag's product. Indeed, Lamm and Couzens warn consumers not to purchase Pycnogenol imitators not manufactured by Horphag.

Garcia's website also contains quotations from scientific literature discussing Horphag's Pycnogenol that were altered to make them appear as though the quotes were discussing Masquelier's product. For instance, Garcia altered a quotation taken from Dr. Richard A. Passwater's book, *Pycnogenol: The Super "Protector" Nutrient* (1994). On Garcia's website, the quotation reads: "Masquelier's Original OPC has not only withstood the test of time (since 1953),[4] it was extensively tested before it was made available as a food supplement." But Passwater's book actually reads: "Pycnogenol has not only withstood the test of time, it was extensively tested before it was made available as a food supplement." *Pycnogenol: The Super "Protector" Nutrient* 99. Passwater's book makes clear that it intended to refer to Horphag's product, a fact Garcia's website does not acknowledge.

Based on these and other alleged misuses of the Pycnogenol trademark by Garcia, Horphag argues that Garcia "has lessened the capacity of Pycnogenol to uniquely identify and distinguish [its] product," thereby diluting Horphag's trademark. Garcia, in turn, argues that Horphag's suit is merely an attempt to stifle the debate on the "true" origins of Pycnogenol.

On June 18, 1999, Horphag sued Garcia alleging trademark infringement, false designation of origin, and trademark dilution under federal law, as well as trademark dilution and

---

[4]There is a slight discrepancy here, in that Garcia claims that Masquelier discovered the pine-bark-based supplement in 1969, while this statement from the website suggests that the product has been around since 1953. The important thing for our purposes is that the quotation was altered.

unfair competition under California law. On July 24, 2000, the district court granted summary judgment in favor of Garcia on Horphag's claim of false designation of origin. The district court also denied Horphag's request for a preliminary injunction. A jury trial was held on the remaining claims from July 24 through 27, 2001.

After both sides rested their cases on July 27, 2001, but before the case was submitted to the jury, the district court granted Horphag's motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) on both its trademark dilution claim and infringement claim. The district court held that Garcia infringed and unlawfully diluted Horphag's trademark Pycnogenol and awarded attorneys' fees to Horphag in its judgment on August 28, 2001. Garcia appealed the judgment as a matter of law and the award of attorneys' fees.

On July 29, 2003, this court issued an amended opinion affirming the district court's summary judgment in favor of Horphag on its trademark infringement claim. *See Horphag Research,* 337 F.3d at 1042. We vacated the judgment on Horphag's trademark dilution and remanded it for reconsideration of the claim in light of *Moseley v. V Secret Catalogue, Inc.,* 537 U.S. 418 (2003), which altered the showing of dilution required for an anti-dilution claim. *See id.* at 1041. We also directed the lower court to reconsider the portion of the attorneys' fees analysis that related to the dilution claim. *See id.* at 1042.

On November 24, 2003, Horphag filed a motion for summary judgment with respect to its dilution claim.[5] Horphag argued that evidence already admitted at trial conclusively proved that Garcia actually diluted its trademark. On January

---

[5]The district court reviewed Horphag's filing under the standard for summary judgment, given that the parties had the opportunity to submit additional evidence relevant to the element of actual dilution. We do likewise.

22, 2004, the district court granted Horphag's motion for summary judgment. It concluded that none of Garcia's purported "material questions of fact" were relevant and that Horphag was entitled to summary judgment as a matter of law. The court also reinstated the award of attorneys' fees. Garcia appealed.[6]

## II.   Standard of Review

A grant of summary judgment is reviewed de novo. *See Buono v. Norton*, 371 F.3d 543, 545 (9th Cir. 2004). In reviewing an order granting summary judgment, we view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in his favor. *See Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004). We must determine whether there are genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). Once the moving party meets its initial burden, however, the burden shifts to the non-moving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.' " *Id.* (citing Fed. R. Civ. P. 56(e)) (emphasis omitted). In reviewing an order granting summary judgment, this court may not weigh the evidence or pass on the credibility of witnesses but is instead limited to determining whether there is any genuine issue for trial. *See Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996).

As an initial matter, Garcia argues that the district court

---

[6]Garcia's appeal was filed pro se. Because we read pro se appeals liberally, we have given Garcia every benefit of the doubt as to which issues are properly before this court.

incorrectly required him, as the non-moving party, to present substantive evidence raising a disputed issue of material fact to avoid summary judgment. Based on Rule 56(e), however, the district court properly shifted the burden to Garcia to set forth evidence raising a disputed issue of material fact after Horphag, as the moving party, satisfied its initial burden by presenting evidence that demonstrated the absence of any genuine issue of material fact.

Garcia also complains that the district court's grant of summary judgment at this stage is contrary to its earlier findings at the preliminary injunction stage. Specifically, Garcia notes that the district court found that there was no likelihood of confusion between the two marks and that the statements on Garcia's website were not false or misleading. Garcia's argument is unavailing because such findings were made before discovery was completed and before the evidence was fully developed at trial. As such, they are not binding on the district court at this stage of the litigation.

## III.  Discussion

### A.  The District Court Properly Granted Horphag's Motion for Summary Judgment on Its Trademark Dilution Claim

[1] The Federal Trademark Dilution Act ("FTDA") provides in relevant part:

> The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection.

15 U.S.C. § 1125(c)(1). Dilution, as defined under 15 U.S.C. § 1127, is "the lessening of the capacity of a famous mark to identify and distinguish goods or services" of the owner of the famous mark such that the strong identification value of the owner's trademark whittles away or is gradually attenuated as a result of its use by another. *See* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:71 (4th ed. 2006) [hereinafter "McCarthy"] (discussing the underlying rationale of the dilution cause of action, which is to protect "the senior user's property right and good will in his mark" from the "gradual diminution or whittling away of the value of [his] trademark, resulting from use by another").

**[2]** The test for trademark dilution, as modified by *Moseley*, requires the trademark owner to show (a) that its mark is famous; (b) that the junior user has made commercial use of the famous mark; (c) that the junior user began using the mark after it had became famous; and (d) that such use caused actual dilution. *See Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 873-74 (9th Cir. 1999) (citing *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1324 (9th Cir. 1998)); *Moseley*, 537 U.S. at 433. Garcia, the junior user, does not challenge the district court's finding as to the first three requirements. Therefore, we consider his challenges regarding actual dilution, and we also consider his various defenses.

### 1.  Horphag has shown actual dilution of its trademark

Garcia argues that the district court erred when it found that Horphag proved actual dilution. We disagree.

**[3]** The Supreme Court, in *Moseley*, altered the last element of our *Avery Dennison* test to require a showing of "actual dilution." 537 U.S. at 433. As to the evidence required to prove actual dilution, the Court distinguished between identical marks and non-identical marks. In cases where the conflicting marks are identical, the Court observed that "[i]t may

well be . . . that direct evidence of dilution such as consumer surveys will not be necessary if actual dilution can reliably be proved through circumstantial evidence—the obvious case is one where the junior and senior marks are identical." *Id.* On the other hand, in cases where the conflicting marks are non-identical, "the mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actionable dilution." *Id.* at 433.

**[4]** To apply this standard from *Moseley*, we first examine whether the junior and senior marks are identical. Assessing whether marks are identical is a fact-based determination. As the Second Circuit has explained, determination of whether the marks are identical tends to be "context-and/or media-specific and factually intensive in nature." *Savin Corp. v. The Savin Group,* 391 F.3d 439, 453 (2d Cir. 2004). We review the district court's factual findings for clear error. *See Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002), aff'd, 540 U.S. 644 (2004). Here, the district court examined the marks and their use, and concluded that the marks were identical. The district court noted that Garcia's use of the word Pycnogenol was "identical to Horphag's registered trademark Pycnogenol." The district court did not clearly err in determining that the marks were identical.

**[5]** Under *Moseley*, Horphag need only provide circumstantial evidence that Garcia's use of Pycnogenol diluted its famous trademark. *See* 537 U.S. at 433. *Moseley* explains, however, that use of an identical mark is itself circumstantial evidence. *Id.*; *see also Savin,* 391 F.3d at 452 (noting that "where a plaintiff who owns a *famous* senior mark can show the commercial use of an identical junior mark, such a showing constitutes circumstantial evidence of the actual-dilution element of an FTDA claim").

**[6]** Even if the conflicting marks were not identical, Garcia (the junior user) would still not prevail because Horphag presented additional evidence of dilution. Specifically, Horphag

presented circumstantial evidence that Garcia's use of the Pycnogenol mark constituted blurring. "Blurring occurs when a defendant uses a plaintiff's trademark to identify the defendant's goods or services, creating the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Panavision Int'l*, 141 F.3d at 1326 n.7. The theory of dilution by blurring thus protects the benefits that flow from a sharp and distinct connection between one mark and one product. *See* McCarthy § 24:70.

**[7]** Garcia has blurred the sharp connection between Horphag's product and the mark Pycnogenol. Horphag's employee Victor Ferrari testified that numerous consumers who contacted Horphag learned, after purchasing Garcia's product, that the product they purchased was not Horphag's Pycnogenol. He also received calls asking whether Garcia "was selling a real Pycnogenol product." This testimony represents evidence that Garcia's actions have lessened the ability of the mark Pycnogenol to uniquely identify Horphag's product. Not only does the infringing use create a "mental association" in the consumer's mind between Horphag's product and the product Garcia sells, but indeed, the evidence shows that some consumers *believed* they were purchasing Pycnogenol—with its good will and reputation—when they purchase Garcia's product. *See Moseley*, 537 U.S. at 435 (Kennedy, J., concurring) ("If a mark will erode or lessen the power of the famous mark to give customers the assurance of quality and the full satisfaction they have in knowing they have purchased goods bearing the famous mark, the elements of dilution may be established.").

**[8]** Contrary to Garcia's arguments, consumer surveys and the like are not necessary in cases like this, where the junior and senior mark were identical and where there is circumstantial evidence that blurring actually resulted. *See id.* at 434. Garcia's use of the mark Pycnogenol has clearly weakened the unique connection between Horphag's mark and Horphag's product.

**[9]** Nor can Garcia avoid summary judgment simply by calling Horphag's evidence a "bald assertion." *See Gasaway v. Nw. Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994) (holding that where the moving party has provided competent evidence, the non-moving party cannot avoid summary judgment simply by arguing that the evidence is "self-serving speculation that should be disregarded"). Accordingly, we conclude that Horphag has provided circumstantial and uncontroverted evidence that actual blurring has occurred, such that the district court properly granted summary judgment on Horphag's trademark dilution claims.[7]

## 2.  Fair Use Defense

**[10]** Garcia argues that his use of Horphag's trademark is protected by the fair use doctrine. We disagree. Eligibility for a fair use defense based on "comparative commercial advertising" is conditioned on the challenged use being fair. *See* McCarthy § 24.97.10. To qualify for a fair use defense, the use must not "create an improper association between a mark and a new product" but must, instead, "merely identify the trademark holder's products." *See Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 806 (9th Cir. 2002).

**[11]** Garcia did more than merely identify Horphag's product as part of an attempt to educate the public on the Pycnogenol debate. Rather, as we found in the previous appeal, Garcia intentionally "spawn[ed] confusion as to sponsorship and attempt[ed] to appropriate the cachet of the trademark Pycnogenol to his product." *Horphag*, 337 F.3d at 1041. Garcia's attempt to capitalize on the popularity of Horphag's product was not "fair." We thus agree with the district court that Garcia has not adequately shown a genuine issue of material fact as to his fair use defense.

---

[7]Because we find that dilution by blurring occurred, we do not reach Horphag's alternative theory of dilution by tarnishment.

### 3.  Comity and Collateral Estoppel

Garcia also argues that this court should, for reasons of comity, follow the decision of the French court in Bordeaux ("the Bordeaux Decision"), which he alleges found that Horphag was not the rightful owner of its trademark in the United States. We agree with the district court that the Bordeaux Decision is inadmissible. The Bordeaux Decision explicitly states that "although the . . . agreement confers on C.E.P. [(one of Masquelier's companies)] an interest to take action to protect the two . . . French trademarks [(one of which is Pycnogenol)], it cannot give [C.E.P.] the right under French law to prevent the Horphag company from using, outside France, the verbal trademark 'Pycnogenol' filed in another country."

### 4.  Derivative Fame "Defense"

Garcia also challenges Horphag's dilution cause of action by claiming that he should not be liable for trademark dilution when the Pycnogenol trademark had already been diluted prior to his use. In Garcia's opposition to summary judgment, he argued that the "*famousness* of [Horphag's] 'Pycnogenol' is derived from . . . [and] rel[ies] upon the *famousness* of the Masquelier 'Pycnogenol.' " He appears to raise the same issue on appeal by arguing that *Horphag* is capitalizing on Masquelier's good will and popularity, rather than the other way around.

We disagree. Garcia has not presented any evidence showing that the Masquelier's product enjoys any fame in the United States that is independent of Horphag's Pycnogenol mark. It is Horphag's product that is a "buzz item" in the United States, not Masquelier's. It is Horphag that has invested in research and marketing to increase the "famousness" of its product in this country, not Masquelier. Horphag's Pycnogenol trademark is famous not because of a

French product, but because of Horphag's own investment in advertising, research, and quality control.

## B. The District Court Did Not Abuse Its Discretion in Reinstating the Award of Attorneys' Fees to Horphag

On remand, this court directed the district court to reconsider the portion of the attorneys' fees analysis related to the dilution claim. *See Horphag Research*, 337 F.3d at 1042. On February 5, 2004, the district court ordered the reinstatement of the award of attorneys' fees to Horphag.

**[12]** Garcia waived any argument relating to the award of attorneys' fees by failing to raise it in his opening brief. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). But even if we were to overlook this technical failure, the district court's award of attorneys' fees was not an abuse of discretion. *See Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156 (9th Cir. 2002) (reviewing award of attorneys fees for abuse of discretion). Under 15 U.S.C. § 1117(a), a court may award reasonable attorneys' fees to the prevailing party in exceptional circumstances, which includes cases in which the act is fraudulent, deliberate, or willful. *See Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000). Garcia made deliberate and calculated attempts to confuse Masquelier's product with Horphag's Pycnogenol by altering quotations from research publications that refer exclusively to Horphag's product. Accordingly, the district court did not abuse its discretion when it reinstated the award of attorneys' fees to Horphag.

## IV.  Conclusion

For the foregoing reasons, the district court's grant of summary judgement of Horphag's trademark dilution claim is **AFFIRMED**.