**Kimberly BROOKS, Plaintiff,**

v.

**CAPISTRANO UNIFIED SCHOOL DISTRICT, and Does 1 through 10, inclusive, Defendants.**

**No. SACV 12–01934–JLS (LPRx).**

United States District Court, C.D. California.

Signed Feb. 20, 2014.

Daniel K. Spradlin, Woodruff Spradlin and Smart APC, Costa Mesa, CA, Gary Steven Bennett, Law Offices of Gary S. Bennett, Laguna Hills, CA, for Plaintiff.

Daniel K. Spradlin, Gregory E. Bullard, Woodruff Spradlin and Smart, Costa Mesa, CA, for Defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT OF CLAIMS ASSERTED AGAINST DEFENDANT CAPISTRANO UNIFIED SCHOOL DISTRICT

JOSEPHINE L. STATON, District Judge.

Before the Court is a Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment of Claims, filed by defendant Capistrano Unified School District ("Defendant" or the "District") (Motion, Doc. 15.) Plaintiff filed an opposition and Defendant replied. (Opp'n, Doc. 18; Reply, Doc. 19.) After reviewing the papers and supporting documentation submitted by the parties, and having taken the matter under submission, the Court GRANTS Defendant's Motion.

## I. BACKGROUND

Kimberly Brooks ("Plaintiff" or "Brooks") was a temporary certificated teacher in special education with the District for the 2011–2012 school year. (Defendant's Separate Statement of Uncontroverted Facts and Conclusions of Law ("Def. SUF") ¶¶ 1–2, Doc. 16.). Brooks understood that her contract with the District was for temporary employment for a specific period of time and that there were no representations of future employment. (Id. ¶ 3.) Soon after she began working at the Marian Bergeson Elementary School, Brooks received positive words of encouragement from the School's Principal, Barbara Scholl. (Plaintiff's Statement of Uncontroverted Facts ("Pl. SUF ¶ 1, Doc. 18–19").) On October 31, 2011, Brooks sent an e-mail to Erin Ferguson, the District's Autism Specialist, complaining that one of her student's Occupational Therapy ("OT") services had been reduced. (Id. ¶ 2; Ex. E to the Compendium of Evidence in Support of Plaintiff's Opposition to Motion for Summary Judgment ("Pl. Comp.") ("I have a question OT [sic] reduced Michaels [sic] services and he hasn't met his goals. I don't believe this is legal. Please advise.").) Brooks continued to express her concerns that several of her students, including a student named Colin, were not receiving the OT services mandated in their individualized education programs ("I.E.P.s"). (Pl. SUF ¶ 3, 6.) Brooks had several conversations with Scholl regarding Anne Braun, the Occupational Therapist. (See id.) Brooks was concerned that Braun was not providing the required OT services on an individualized basis. (See id.)

In January 2012, Brooks received a positive performance review from Scholl. (See id. ¶ 5.) Things apparently took a turn for the worse. Although Brooks denies much of the underlying conduct, it is undisputed that starting in December 2011, Brooks'

conduct was reported to District officials as follows: (1) she let her students touch her inappropriately; (2) she let students sit in her lap; (3) she made inappropriate sexual comments to staff (*e.g.*, inquiring into the caloric content of semen); (4) she used a loud and angry voice with staff; (5) she threw toys and chairs in the classroom; (6) she threw bean bags at her students' faces; and (7) she let a student lick chocolate pudding off her face. (Def. SUF ¶¶ 5–12.)

Scholl summarized the issues she had with Brooks throughout the school year by sending her periodic e-mails. (Defendant's Compendium of Evidence in Support of Defendant's Motion for Summary Judgment ("Def. Comp."), Ex. H, Doc. 17–8.) These e-mails are dated December 8, 2011 (throwing toys and chair, inappropriate touching, pudding incident); January 30, 2012 (sexual remarks, loud speaking voice); and February 29, 2012. (*Id.*) This last e-mail summarized a meeting held on February 28, 2012, in which Scholl and Brooks discussed the OT services provided by Braun. (*Id.*)

On March 1, 2012, the District issued a preliminary lay-off notice to each of its 360 temporary certificated teachers, including Brooks. (Def. SUF ¶ 13.) This notice was issued pursuant to the California Education Code to inform the District's temporary teachers that their services would not be needed for the 2012–2013 school year. (Def. Comp., Ex. B, Doc. 17–2.) Neither the concerns raised by Brooks regarding the provision of OT services nor her alleged inappropriate behavior had any bearing on the issuance of this notice. (*See* Declaration of Jodee Brentlinger ("Brentlinger Decl.") ¶ 10.)

Plaintiff met with Scholl and Braun on March 7, 2012. (Pl. SUF ¶ 8.) The purpose of this meeting was to discuss Colin's

upcoming I.E.P. meeting with Colin's mother, scheduled for March 9, 2012. (*Id.*) Scholl asked Brooks what she was going to say at Colin's I.E.P. Brooks responded that she was not going to perjure herself and was going to say that Colin was not getting his individualized O.T. (*Id.*) Brooks was not permitted to attend Colin's I.E.P. meeting on March 9, 2012.[1] (*Id.*) According to Scholl, the disputes regarding OT services were addressed at the school site level, in other words, no one at the District level was notified that Brooks had raised these issues. (*See* Declaration of Barbara Scholl ("Scholl Decl.") ¶ 4.) Scholl's assessment of the resolution of the OT dispute comports with that of Jodee Brentlinger, Assistant Superintendent of Personnel Services for the District. (*See* Brentlinger Decl. ¶ 6 ("The concern raised by Ms. Brooks relating to the provision of occupational therapy services to her student was addressed at the school site level by that student's I.E.P. team and parents."); *id.* ¶ 20 ("The Board was not made aware of the concerns that Ms. Brooks had raised relating to the provision of services to one of her students. The concerns raised by Ms. Brooks were not discussed or referenced in any way by anyone in attendance at the Board meeting, including members of the Board.").)

On March 7, 2012, the same day Brooks met with Scholl and Braun, three independent facilitators working in Brooks' classroom reported to Scholl that they had witnessed inappropriate conduct on Brooks' part. (Def. SUF ¶ 15.) Specifically, the three facilitators (Kathleen Jenson, Evangeline Duenas–Gonzales and Meghan Wolfson) each reported that, on March 7, 2012, they observed Brooks throwing bean bags at her students using an overhand throw. (*Id.; see also* Def. Comp. Ex. I, Doc. 17–9.) Additionally, the

---

1. At the time of Colin's I.E.P., Brooks had

already been placed on administrative leave.

facilitators told Scholl that Brooks allowed a male student to touch one of her breasts for an extended period of time that same day. (*Id.*) Shortly thereafter, Scholl reported to Brentlinger what the facilitators told her. (*See* Scholl Decl. ¶ 12; Brentlinger Decl. ¶ 12.) One day later, on March 8, 2012, the District sent Brooks a written notice informing her that she was being placed on administrative leave pending an investigation. (Def. SUF ¶ 17; *see also* Def. Comp., Ex. C, Doc. 17–3.) The investigator, T. Davis & Associates, Inc., began its investigation on March 15, 2012. (*Id.* ¶ 20.)

The Board of Trustees for the District met on March 12, 2012, and adopted Resolution No. 1112–38. (*Id.* ¶ 21; *see also* Def. Comp., Ex. D, Doc. 17–4.) Resolution No. 1112–38 lists the names of thirteen teachers who were being released and not reelected for employment for the 2012–2013 school year. (Ex. D ¶ 2.) Kimberly Brooks is one of the names so listed. (*Id.*) Resolution No. 1112–38 directed the District Superintendent to send the appropriate notice to the terminated teachers, including Brooks (Def. SUF ¶ 22.) On March 13, 2012, the District sent Brooks a Notice of Release/Non–Reelection of Certificated Employment & Rescission of Preliminary Layoff Notice. (*Id.* ¶ 23; *see also* Def. Comp., Ex. E, Doc. 17–5.) The Notice of Release/Non–Reelection states: "Because you have been released and non-reelected for the 2012–2013 school year, you are no longer entitled to participate in the layoff process, nor do you have any of the rights afforded to probationary and permanent employees...." (Ex. E at 1.)

The investigation into Brooks' alleged misconduct concluded on April 17, 2012. (Def. SUF ¶ 24.) The District sent Brooks a letter the same day informing her that the investigation did not yield evidence of criminal conduct but did "reveal issues surrounding [Brooks'] judgment and pro-

fessional conduct." (*Id.* ¶ 25; *see also* Def. Comp., Ex. F, Doc. 17–6.) Two days later, on April 19, 2012, the District sent a letter to Brooks informing her that she would remain on paid administrative leave until the end of the school year on June 21, 2012. (*Id.* ¶ 26; *see also id.* Ex. G, Doc. 17–7.) That letter states that "[t]his action is being taken as a result of the District's concern regarding your judgment and professional conduct in the work environment." (Ex. G at 1.)

Plaintiff claims that her non-renewal was in retaliation for her criticism regarding the provision of OT, or lack thereof. Accordingly, Plaintiff brings the following claims for relief: (1) retaliation in violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Rehabilitation Act"); and (2) retaliation in violation of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132. (*See* Complaint ¶¶ 21–34.) For the following reasons, Defendant's motion for summary judgment is granted and this action is dismissed.

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). *See also Fortyune v. American Multi–Cinema, Inc.*, 364 F.3d 1075, 1079–80 (9th Cir.2004) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting Fed.R.Civ.P. 56(c))). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Free-*

cycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir.2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is "material" when its resolution " 'might affect the outcome of the suit under the governing law.' " George v. Morris, 736 F.3d 829, 834 (9th Cir.2013) (quoting Anderson, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of identifying " 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " Federal Trade Comm'n v. Stefanchik, 559 F.3d 924, 927 (9th Cir.2009) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted)). "Once the moving party meets its initial burden, however, the burden shifts to the non-moving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir.2007) (quotation marks and citation omitted). To defeat a motion for summary judgment, the non-moving party "must 'do more than simply show that there is some metaphysical doubt as to the material facts.' " Sluimer v. Verity, Inc., 606 F.3d 584, 586 (9th Cir.2010) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Furthermore, the non-moving party may not rely on "conclusory allegations" or "mere speculation." Rogers v. Giurbino, No. 11cv0560, 2013 WL 692961, at *14 (S.D.Cal. Feb. 26, 2013). Rather, the "nonmoving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir.2010)

(citing Anderson, 477 U.S. at 252, 106 S.Ct. 2505).

In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant. See Anderson, 477 U.S. at 255, 106 S.Ct. 2505. However, " 'credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' " Acosta v. City of Costa Mesa, 718 F.3d 800, 828 (9th Cir.2013) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.

## III. DISCUSSION

### A. Burden Shifting

"Because the ADA was modeled on section 504 of the Rehabilitation Act, 'courts have applied the same analysis to claims brought under both statutes.' " Boose v.Tri-County Metro. Transp. Dist. of Oregon, 587 F.3d 997, 1001 n. 5 (9th Cir.2009) (quoting Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1045 n. 11 (9th Cir.1999)). See also Douglas v. California Dep't of Youth Auth., 285 F.3d 1226, 1229 n. 3 (9th Cir.2002) (noting that cases interpreting the ADA and the Rehabilitation Act are "interchangeable").

■ Accordingly, the legal elements and the production of proof for a retaliation claim under the Rehabilitation Act is the same as that used under the ADA, namely, that in the absence of direct evidence of retaliation, a plaintiff may rely on the burden-shifting framework used for proving discrimination claims under Title VII as articulated in McDonnell Douglas Corp. v.

*Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Corrales v. Moreno Valley Unified Sch. Dist.,* No. 08–00040–AC, 2010 WL 2384599, at *4 (C.D.Cal. June 10, 2010) (parallel citations omitted).

■ Under the *McDonnell Douglas* burden-shifting framework, the plaintiff must first establish a prima facie case of retaliation. Then the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for the actions taken. If the defendant does so, the plaintiff must then show that the defendant's proffered reason is a pretext for retaliation. *See McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. 1817.

### B. Prima Facie Case of Retaliation

■ Brooks must first establish a prima facie case of retaliation by showing that: (1) she engaged in protected activity; (2) she suffered a materially adverse employment action; and (3) there exists a causal connection between the protected activity and the adverse employment action. *See Pardi v. Kaiser Found. Hosp.,* 389 F.3d 840, 849 (9th Cir.2004). These elements will now be parsed to determine whether Brooks has made a prima facie case of retaliation.

### 1. Protected Activity

■ A special education teacher must do more than merely assist her disabled students in order for there to be protected activity. *See Corrales,* 2010 WL 2384599, at *5 ("Certainly, the teacher must express something to others about her concern with the treatment of their [sic] disabled students; merely helping students in the class or in attending therapy sessions will not do."). Rather, a teacher must advocate on behalf of her disabled students or protest discrimination perpetrated on them by others. *See Ray v. Henderson,* 217 F.3d 1234, 1240 n. 3 (9th Cir.2000)

("[A]n employee's complaints about the treatment of others is considered a protected activity."); *Polonsky–Britt v. Yuba City Unified Sch. Dist.,* No. 2:10–cv–02951–KJM–JFM, 2012 WL 5828513, at *4 (E.D.Cal. Nov. 15, 2012) ("Advocating for disabled students on issues related to their federal and state educational rights is a protected activity."). Here, Brooks' actions in complaining about the lack of individualized OT for several students qualifies as a protected activity.

### 2. Adverse Employment Action

■■ The Ninth Circuit takes an expansive view of the types of action that qualify as an adverse employment action. *See Pardi,* 389 F.3d at 850. An adverse employment action is any action "reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson,* 217 F.3d 1234, 1243(9th Cir. 2000). *Accord Burlington N. and Santa Fe Ry. Co.,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (stating that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (internal quotation marks and citations omitted). The District's decision in not renewing Brooks' contract qualifies as an adverse employment action. *See Okonkwo v. Arizona State Univ.,* No. 01–1231–PHX–SRB, 2003 WL 26117561, at *9 (D.Ariz. Dec. 22, 2003).

### 3. Causation

■ Recently, the Supreme Court held that Title VII retaliation claims must be proved "according to traditional principles of but-for causation. . . ." *University of Texas Sw. Med. Ctr. v. Nassar,* —— U.S. ——, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503

(2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* The question, then, is whether this but-for standard should apply to retaliation claims brought under different statutes, such as the Rehabilitation Act and the ADA.

■ It is fairly evident that retaliation claims brought under the Rehabilitation Act require but-for causation. The Rehabilitation Act prohibits discrimination "solely by reason" of an individual's disability. 29 U.S.C. § 794(a). "Because of the word 'solely,' the Rehabilitation Act, unlike the ADA, has consistently been interpreted to require a 'but for' standard of causation." *Siring v. Oregon State Bd. of Higher Educ.*, 977 F.Supp.2d 1058, 1062, No. 3:11–cv–01407, 2013 WL 5636718, at *2 (D.Or. Oct. 15, 2013). The situation is less clear when it comes to the ADA. *See id.* at 1061, 2013 WL 5636718 at *1 (stating that "it is unclear whether [*Nassar*] affects the causation standard for other employment discrimination causes of action with similar causation language as Title VII, such as claims under the ADA").

The Ninth Circuit has not yet had the opportunity to apply the *Nassar* but-for causation standard to ADA retaliation claims. *See Doan v. San Ramon Valley Sch. Dist.*, No. C 13–03866–CRB, 2014 WL 296861, at *3 (N.D.Cal. Jan. 27, 2014). But some lower courts have reasoned that because ADA retaliation claims are analyzed under the same framework as Title VII retaliation claims, the *Nassar* but-for standard applies outside the context of Title VII. *See, e.g., id.* at *3, n. 4 (requiring a but-for causal link between the protected activity and the adverse employment action because "ADA retaliation claims are subject to the same framework of analysis as that of Title VII."); *Equal Employment Opportunity Comm'n v. Evergreen Alliance Golf Ltd.*, No. CV 11–0662–PHX–

JAT, 2013 WL 4478870, at *11 (D.Ariz. Aug. 21, 2013) ("Retaliation claims require proof by a preponderance of the evidence that the adverse employment action would not have occurred in the absence of the protected activity."). *But see Siring*, 977 F.Supp.2d at 1063, 2013 WL 5636718, at *3 (applying the "motivating factor" standard to ADA *discrimination* claims, not ADA *retaliation* claims).

■ This Court sees no principled reason why Title VII retaliation claims are subject to the but-for causation standard while the lesser "motivating factor" causation standard would apply to retaliation claims brought under other statutes. Accordingly, this Court finds that ADA retaliation claims are also subject to a but-for causation standard. *See Nassar*, 133 S.Ct. at 2532 (stating that "the lessened causation standard would make it far more difficult to dismiss dubious claims at the summary judgment stage"). Given the litany of reports about Plaintiff's misconduct, she simply cannot satisfy a but-for standard of causation.

■ Even if a lesser standard of causation were applied, plaintiff would still be unable to show causation. In general, if the decision maker does not have knowledge of the plaintiff's protected activity, there can be no retaliation for engaging in that activity. *See Reed v. Avis Budget Grp., Inc.*, 472 Fed.Appx. 525, 526 (9th Cir.2012); *Thomas v. City of Beaverton*, 379 F.3d 802, 812 n. 4 (9th Cir.2004) ("The employer's awareness of the protected activity is also important in establishing a causal link."); *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir.2003) ("[T]he plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity."); *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir.1982)

("Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity."); *Gunther v. County of Washington,* 623 F.2d 1303, 1316 (9th Cir.1979). Here, the undisputed evidence reflects that the Board of Trustees was unaware of Brooks' protected activity in criticizing her school's OT services when it chose not to reinstate her contract. (*See* Brentlinger Decl. ¶ 20.) Without causation, Plaintiff cannot establish a prima facie case of retaliation and get past the first *McDonnell Douglas* hurdle.

### C. Legitimate Non–Retaliatory Reasons

■ Assuming, *arguendo,* that the but-for standard does not apply to ADA retaliation claims and that Plaintiff has stated a prima facie case of retaliation, her claims still fail. The District has put forth legitimate, nonretaliatory reasons for not renewing Brooks' contract. Given the Brentlinger and Scholl Declarations, it is uncontroverted that the decision of the Board of Trustees not to renew Brooks' contract was based on reported incidents of poor judgment and inappropriate conduct on Brooks' part. (*See* Brentlinger Decl. ¶ 20 (stating that at the March 12, 2012 meeting, the Board of Trustees was not aware of Brooks' OT concerns which "were not discussed or referenced in any way by anyone in attendance at the Board meeting"); Scholl Decl. ¶ 4 ("The concern raised by Ms. Brooks relating to the provision of occupational therapy services to her student was addressed at the school site level by that student's I.E.P. team (which included me) and the student's parents.").) It is immaterial whether Brooks actually engaged in the conduct underlying the reports; the reports, whether true or not, provide a legitimate, non-retaliatory reason for the District's decision. (*See* Plaintiff's Response to Defendant's [Proposed] Statement of Uncontroverted Facts and Conclusions of Law ¶¶ 5–12 (Plaintiff does not dispute that misconduct reports were received by District officials, although she does dispute some of the underlying conduct).) Unless pretext can be shown, the District's neutral reasons for not renewing Brooks' contract defeat her retaliation claims as a matter of law.

### D. Pretext

■ To defeat summary judgment with a showing of pretext, a plaintiff must demonstrate that: (1) the defendant's proffered reason is unworthy of credence; or (2) retaliation was the more likely motivation. *See Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1062–63 (9th Cir.2002). Plaintiff has done neither. Plaintiff's only evidence of pretext is the temporal proximity between her March 7, 2012 meeting with Scholl and Braun and the District's decision to place her on paid administrative leave the next day. But mere temporal proximity is generally insufficient to show pretext. *See Hooker v. Parker Hannifin Corp.,* 548 Fed.Appx. 368, 370, No. 12–55134, 2013 WL 6085616, at *2 (9th Cir. Nov. 20, 2013) ("While evidence of temporal proximity is sufficient to demonstrate a prima facie case of retaliation, ... it is ordinarily insufficient to satisfy the secondary burden to provide evidence of pretext."); *Huck v. Kone, Inc.,* 539 Fed.Appx. 754, 755 (9th Cir.2013) (stating that plaintiff's "only evidence of discrimination was the temporal proximity of his termination to his medical leave, which is insufficient to prove pretext."). *But see Dawson v. Entek Int'l,* 630 F.3d 928, 937 (9th Cir.2011) ("In some cases, temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the showing of pretext.") (emphasis added). Here, mere temporal proximity, with nothing more, is insufficient to establish pretext.

There is no evidence that the decision maker, the Board of Trustees, knew of Plaintiff's protected activity when it decided not to renew her contract. If there is no retaliation, there can be no showing of pretext. Furthermore, there is evidence that Plaintiff engaged in misconduct on March 7, 2012, by physically assaulting some of her students with bean bags, and that this misconduct was reported immediately to the District. Thus, the close temporal proximity between Plaintiff's protestations over Colin's OT and her removal on March 8, 2012, is insufficient to establish pretext on the part of the District.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is GRANTED and this case is dismissed.

**SO ORDERED.**